UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS DISTRICT COUNCIL NO. 1 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, | ) ) ) ) ) | No. 03 C 5744 |
| Plaintiff, | ) ) | Judge Rebecca R. Pallmeyer |
| v. | ) ) ) | |
| STEVEN GIANAKAS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers (the "Union"), has brought this action against Defendant Steven Gianakas, the president of Hickory Hills Development Company. Specifically, Plaintiff seeks to enforce an arbitration award issued against Hickory Hills against Mr. Gianakas in his personal capacity. Plaintiff now moves for summary judgment. For the reasons stated below, Plaintiff's motion is granted.

## FACTS AND PROCEDURAL HISTORY

Hickory Hills is an Illinois corporation with its principal place of business in Cook County. Mr. Gianakas is the sole shareholder and president of Hickory Hills. (Plaintiff's Local Rule 56.1(a) Statement, hereinafter, "Pl.'s 56.1(a)," ¶ 3.) On March 16, 1991, Hickory Hills entered into a collective bargaining agreement with the Union. (Id. ¶ 4.) Defendant Gianakas signed the agreement in his capacity as president of Hickory Hills, not in his personal capacity. The present lawsuit arises out of this agreement.

In September 2001, the Joint Arbitration Board (the "JAB") entered an award in favor of the Union and against Hickory Hills after the Union had filed a grievance under the CBA.[1] (Defendant's Answer, ¶ 8.) Hickory Hills refused to comply with the award against it. On July 2002, the Union filed an enforcement action pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Two months later, on September 17, 2002, Judge Amy St. Eve granted the Union's motion for default judgment, ordering Hickory Hills to comply with the arbitration award and make payments totaling approximately $44,000 to the Union. *Illinois Dist. Council of Bricklayers v. Hickory Hills Development Co.*, No. 02 C 4914 (Order dated Sept. 17, 2002). Despite this order, the Union was unable to obtain satisfaction of the judgment in its favor.

Subsequently, in a letter dated March 3, 2003, the Union informed Gianakas that it believed that his relationship with Hickory Hills made him personally liable for its obligations under the CBA, including unsatisfied obligations adjudicated in the prior JAB proceeding. (Pl.'s 56.1(a), ¶ 8; Letter from Pete Marinopoulos to Steve Gianakas, dated Mar. 3, 2003, Ex. C to Pl.'s 56.1(a).) The letter also advised Gianakas that the JAB would conduct a hearing on March 19, 2003 to consider the Union's grievance against Mr. Gianakas in his personal capacity. (*Id.*) Upon receipt of the March 3 letter, Mr. Gianakas's attorney Mark Grochocinski responded with a letter of his own to the Union's attorney on March 5. In this March 5 letter, Mr. Grochocinski stated that Gianakas was not party to any agreement with the Union or the JAB, and would not attend the arbitration hearing unless presented with some authority indicating that his attendance was required. (Pl.'s 56.1(a), ¶ 9; Letter from Mark Grochocinski to Barry Bennett, dated Mar. 5, 2003, Ex. D to Pl.'s 56.1(a).)

---

[1] The substance of the 2001 grievance and arbitration award are not relevant to the present proceedings.

Bennett and Grochocinski exchanged three additional letters prior to the March 19 hearing. On March 7, Bennett responded to Grochocinski's March 5 letter, stating that the Union would not attempt to force Gianakas to attend the arbitration, but that the hearing would proceed with or without him. (Letter from Barry Bennett to Mark Grochocinski, dated Mar. 7, 2003, Ex. E to Pl.'s 56.1(a).) More than a week later, Grochocinski sent a brief letter in which he reiterated his client's decision not to attend the hearing, unless the Union first provided some authority for the jurisdictional basis of the hearing. (Letter from Mark Grochocinski to Barry Bennett, dated Mar. 16, 2003, Ex. F to Pl.'s 56.1(a).) One day later, Bennett responded via fax, asserting that the basis for the grievance claim against Gianakas "is that he is personally liable under the labor contract for obligations incurred by Hickory Hills." (Letter from Barry Bennett to Mark Grochocinski, dated Mar. 17, 2003, Ex. G to Pl.'s 56.1(a).) In addition, Bennett reaffirmed the Union's intentions to go forward with the grievance hearing, regardless of whether or not Gianakas chose to attend. (Id.)

On March 19, 2003, Union representatives presented a case in support of the grievance against Mr. Gianakas to the JAB. (Pl.'s 56.1(a), ¶ 15.) Mr. Gianakas did not himself attend, nor did he send a representative to present his position case to the JAB. (Id.) Following the hearing, the JAB ruled that Gianakas was personally liable for approximately $48,000 in damages, plus interest, and that he would also be liable for legal fees and costs if he refused to comply with the award and force the Union to file an enforcement action. (Id. ¶ 16; JAB Award, Ex. H to Pl.'s 56.1(a).) The Union's Administrative Manager mailed copies of the JAB award to both Mr. Gianakas and his attorney Mr. Grochocinski by regular and certified mail, along with a cover letter from Union President Pete Marinopoulos. (Pl.'s 56.1(a), ¶¶ 17-18.) The certified mailing to Gianakas came back

marked as having been unclaimed, though the regular delivery was never returned.[2] (*Id.* ¶ 19.) Substantial correspondence between Bennett and Grochocinski regarding the validity of the JAB award confirm that Gianakas had timely notice of it.[3]

To date, neither Mr. Gianakas nor any other person or entity has satisfied the obligations imposed by the JAB award. On August 15, 2004, the Union filed an enforcement action under § 301 of the Labor Management Relations Act against Gianakas, claiming that his relationship with Hickory Hills made him personally responsible for its obligations under the CBA. Prior to that time, Mr. Gianakas had not taken any legal action to challenge the validity of the JAB Award. On July 6, 2004, this court denied Plaintiff's motion for default judgment and Defendant's motion to dismiss, *Illinois Dist. Council of Bricklayers v. Gianakas*, No. 03 C 5744 (Order dated July 6, 2004), but invited a motion for summary judgment. That motion is now before the court.

## DISCUSSION

Defendant Gianakas urges that the arbitration award should not be enforced against him in his personal capacity because has no contractual relationship with the Union and was not party to the CBA. Although he did sign the CBA, Gianakas asserts that he did so only on behalf of Hickory Hills, as its President, not in his personal capacity. In response, the Union asserts that Gianakas's

---

[2] During his deposition, Gianakas testified that he could not recall seeing any letters regarding the JAB award, or discussing the award with his attorney. (Pl.'s 56.1(a), ¶¶ 14, 20, 22, 26, 29.) On May 10, 2003, however, a private process server served a copy of the JAB Award and cover letter from Union President Marinopoulos to Gianakas's wife at their home. (*Id.* ¶ 28.) Moreover, Gianakas did not respond to the Union's 56.1(a) statements that he had received notice of the hearing and the subsequent judgment against him. Absent such a response, the allegation that Gianakas had notice is deemed admitted. *See Jackson v. Carpenters Local Union #1*, No. 02 C 9091, 2004 WL 2191584, *3-4 (N.D. Ill. Sept. 24, 2004).

[3] The substance of this correspondence is not relevant to the current proceedings.

failure to seek to vacate the arbitration award within the 90-day statute of limitations under Illinois law bars him from challenging the enforcement of the award here.

Section 301 of the Labor Management Relations Act does not identify a statute of limitations to apply to a challenge to an arbitration decision. In the absence of such a provision, federal courts apply the statute of limitations for a comparable action in the forum state. *Sullivan v. Gilchrist*, 87 F.3d 867, 870 (7th Cir. 1996), citing *Teamsters Local 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir. 1989). In Illinois, the statute of limitations for challenging an arbitration award is the 90-day limitations period prescribed by the Illinois Arbitration Act, 710 ILCS 5/12(b). *Id.*, citing *Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir. 1994).

The Seventh Circuit has observed that the only avenue available for a party seeking to nullify an arbitration award is a timely suit to vacate and that the "failure to challenge an arbitration award within the applicable limitations period renders the award final." *Sullivan*, 87 F.3d at 871, citing *International Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987). Thus, "a defendant's failure to move to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award." *Plumbers Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir. 1985), citing *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025 (7th Cir. 1980). Two rationales underlie and inform this policy: (1) "the federal policy favoring *voluntary* arbitration as the most expedient method of resolving labor disputes," *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 125 v. Jefferson Trucking Co., Inc.*, 628 F.2d 1023, 1027 (7th Cir. 1980), and

5

(2) the "desire to ensure speedy resolution of labor disputes." *International Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 432 (7th Cir. 1998).

In *Gilchrist*, for example, an arbitration board had entered an award against two defendants. *Gilchrist*, 87 F.3d at 871. One of the two defendants, the original proprietor of a plumbing business, had executed the collective bargaining agreement; the other, his successor, had not. Because neither had challenged the award within the 90-day limitations period, the Seventh Circuit held the non-signatory was barred from arguing that the arbitration board had no jurisdiction over him, and that its award was therefore unenforceable.

Similarly, in *Rabine*, the party seeking to challenge the arbitration award had signed the CBA at issue, but had an apparently meritorious argument that the business on whose behalf he had signed the agreement was not an "employer" under the Labor Management Relations Act. Regardless of the merits, the Seventh Circuit concluded that defendant's failure to assert the argument within the 90-day limitations period was fatal: "The contract may have been invalid, or the clause inapplicable to the dispute, but when [the defendant] and his companies made the decision to sit on their collective hands, they waived the right to challenge the outcome later." *Id.* at 432. Plaintiff here argues, under the rationale of *Gilchrist* and *Rabine*, that Gianakas's failure to challenge the arbitration award within 90 days requires judgment in Plaintiff's favor.

Gianakas urges that *Gilchrist* and *Rabine* are inapposite because, unlike defendants in those cases, Gianakas was not a party to the collective bargaining agreement, nor had he otherwise agreed to submit disputes with the Union to arbitration. In support of this argument, Gianakas cites the basic principles governing the arbitrability of disputes under collective bargaining agreements laid down in the famous *Steel Workers Trilogy*. (Defendant's Response to Plaintiff's Motion for Summary

6

Judgment, at 5, citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'").) More relevantly, Gianakas relies on *dicta* in which the *Rabine* court allowed that

> [t]here may be situations in which the important national labor policies that militate in favor of speedy and certain enforcement of labor arbitrations, . . . would run up against the more fundamental underlying policy that parties, including unions and employers, should be held to their contractual commitments to arbitrate, but not forced to submit to contracts to which they are not parties or to terms they did not accept.

*Rabine*, 161 F.3d at 432 (internal citation omitted). Together, Gianakas submits that this authority establishes that the 90-day limitations period in which to dispute an arbitration award is not absolute.

The court does not agree. Gianakas had every right to challenge the arbitration award. He could have, for example, appeared before the arbitration board to defend himself, while preserving his jurisdictional argument. Short of that, he could have taken action to vacate the award. Had he done so within the applicable limitations period, this court might well have agreed with his argument that he was not personally bound by the collective bargaining agreement. Unfortunately the route he chose was the one that he could not safely take: to do nothing. That this inaction is fatal to his argument here should come as no surprise. As the Seventh Circuit has noted, "The rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up." *Rabine*, 161 F.3d at 434.

The court reaches this conclusion notwithstanding *International Union of Operating Engineers, Local 150, AFL-CIO v. Triad Construction Services, Inc.*, No. 97 C 6218, 1999 WL 759516 (N.D. Ill. Sept. 1, 1999), an unpublished decision cited by Gianakas. In *Triad*, a company challenging an arbitration award claimed that it was not a party to the collective bargaining agreement because no

7

authorized agent of the company had signed the agreement, nor had the company ratified it. The court rejected the plaintiff union's argument that the company was barred from challenging the arbitration award because it had failed to do so within the 90-day statue of limitations period. In doing so, the court noted that the individual who had purportedly signed the collective bargaining agreement on behalf of the company had no authority to do so and the Union was aware of this fact. *Id.* at *2. As a result, the court found the agreement was "not simply unenforceable, but void *ab initio*." *Id.* at *3 (citation omitted).

The facts of this case are distinguishable from those in *Triad*. In *Triad*, the plaintiff union knew that the individual who signed the agreement lacked the authority to do so, suggesting that the union lacked a good faith basis for proceeding in arbitration against the company. In contrast, the Union here maintains that it does have a good faith basis for attempting to enforce the arbitration award against Gianakas in his personal capacity under an alter ego theory. This court's colleague Judge Gettleman has similarly distinguished *Triad*, holding that "all *Triad* stands for is that the union did not have an arguable basis for jurisdiction because at the time it filed the complaint it knew there was no valid CBA, and could not in good faith so allege." *International District Council of Bricklayers v. Nagel*, No. 05 C 0325, *7 (Order dated July 6, 2005). In *Nagel*, the defendant argued that the plaintiff union could not enforce an arbitration award entered against him in his personal capacity because he was not a party or signatory to the collective bargaining agreement, but had merely signed the agreement on behalf of a corporation. *Id.* at *2-3. While allowing that this defense might be valid, the court held that, having failed to challenge the award within the limitations period, the defendant was barred from raising such arguments in the present enforcement action. *Id.* at *6-7.

8

In any event, to the extent that *Triad* is not factually distinguishable from the present case, the court respectfully disagrees with its analysis. Although the Seventh Circuit has allowed that in certain circumstances, it might allow a defendant to challenge an arbitration award after the expiration of the 90-day limitations period, *Rabine*, 161 F.3d at 432, to date, it has not identified any such circumstances. Absent further direction from above, this court is unwilling to hold that a defendant with full knowledge of a pending arbitration proceeding and subsequent adverse arbitration award is excused from the obligation to challenge the award within the limitations period merely because he believes that the award was based on an invalid alter ego theory. Defendant Gianakas had every opportunity to present this argument to the arbitration board, or in a subsequent timely action to vacate the award period. Having failed to exercise these rights, he is bound by the award.

## CONCLUSION

For the reasons set forth, Plaintiff's motion for summary judgment (Doc. No. 32-1) is granted. Plaintiff is invited to submit a proposed judgment order forthwith.

ENTER:

Dated: July 15, 2005

REBECCA R. PALLMEYER
United States District Judge